Garuthers, J.,
delivered tbe opinion of tbe court.
Tbe tenth clause in tbe will of Lemuel Morton is in these words: “ My wish and desire is, that tbe Gilchrist tract of land, lying in Bedford county, be equally divided between my children, W. E. Morton, John S., Sarah N., Geo. W., and Thomas B.., or to as many as are alive when divided.”
Tbe nineteenth clause reads thus: “ My wish and desire is, that those of my children, that have not arrived at tbe age of nineteen years, when they do arrive at that age, receive tbe property that is left to *319 them, but not be sufferred to dispose of it, without the consent of my executors, or their guardians, until they arrive at the age of twenty-one years.”
William E. Morton was more than twenty-one at the date of the will. He died before the testator, his father, leaving an only child, the defendant, William S. Morton, who is still under the age of nineteen.
The complainant, John S. Morton, is now over the age of nineteen, and files this bill for the partition of the Gilchrist tract of land.
The only question in the case is, whether the son of William E., the said William S., is entitled to the share of his father.
The chancellor decreed against him, and he appealed.
It is argued that the case is embraced, and his right saved by the third section of the act of 1842, ch. 169. Before that act, the death of a devisee or legatee, before the testator, would cause the devise or legacy to lapse, and the benefit of it, could not be claimed by the children or representatives. But by that act, the lapse is prevented where issue are left, and the .same “shall take effect, as if the death had not occurred, till after the death of the testator; that is, it shall go to the issue, wiless a contrary rntrntíon shall a/ppea/r by the will.” Nich. Sup., 148.
Now, when this devise is tested by the- act relied upon, what is the result? The devise is to his son, William. E., and the law is, that in tlje event of his death, leaving issue, before the testator, the devise shall not lapse, as it would have, without the change of the law, unless it appeared by the will, that it was not the intention that the children should take in the place of the father,, or, as he would do, if living.
*320 It is difficult to see bow plainer words could have been used to evince an. intention, tbat none other than the children named should participate in this devise. It is to go to, and be equally divided between, the five children named, “ or to as many as are alive when divided.” He seemed to anticipate the probability of the death of some of them and provided, in that event, that this particular land should be divided only between such of his said children as might be living at the time of division, which time was fixed in a subsequent clause. He thus expressly guarded, as it would seem, against the right of the issue to represent the parent in this devise.
So, we consider it very clear, that even if this were a case falling under the act of 1842, the son of 'William E., is excluded by its provisions; as the “ contrary intention” referred to, is manifest in this will.
Many cases are referred to, in argument, to show that the courts will often change the word or, to and; imply words; disregard those used; reform sentences, &c., in the construction of wills. But, it is sufficient to remark, in relation to all these cases and rules, without examining them in detail, that they only apply where there is uncertainty in the will, and are resorted to for the purpose of ascertaining and carrying out the intention.
The decree of the chancellor is, in all things, affirmed, and the cause is remanded for further proceedings.